We're now going to move to case number 4 McCoy v. Atherton appeal 18-1086 we're first going to hear from Mr. Gillette Good morning and may it please the court Gabriel Gillette of Jenner and Block supporting plaintiff appellant Keith McCoy. If I can I'd like to make two points quickly and then I'd be happy to answer the court's questions. First the district court erred in granting summary judgment on McCoy's due process claim. McCoy was a pretrial detainee who was cleared by medical staff and placed in general population but then he was moved to administrative segregation without explanation. That's effectively solitary confinement where he remained for the rest of his detention. Why? In the words of defendant Menchaca to protect McCoy from other inmates and to stop McCoy from quote potentially preying on other inmates due to his sexual orientation Mr. Gillette you're not contesting the dismissal of defendants Atherton, Gore, Hogan, Foster and Pearson on the due process claim are you? No your honor. It's hard for me to say that definitively because of our posture as amicus. I understand. I'll take that caveat but in your posture as amicus you're not challenging or saying that the district court incorrectly dismissed those defendants are you? That's correct. What's interesting about this statement from Mr. Menchaca is it is the only evidence at summary judgment. It's the sole piece of evidence defendants rely on and a jury could have construed it as supporting the fact that McCoy was segregated for punitive reasons in violation of his due process rights. What's interesting is that there is literally nothing else in the record supporting that decision. There are no policies or procedures of the prison of how they deal with gay or transgender inmates. There's no evidence about a determination that McCoy presents a safety concern. There's no history of incidents with him or any other detainees. There's no specific incident when he actually gets to the jail. He's cleared by medical and placed in general population but still moved to segregation. On that record the district court didn't have a basis for taking the jury and saying as a matter of law there was no punitive basis for the segregation. Mr. Gillette, can Mr. McCoy maintain a due process action if the conditions in the medical mental health unit didn't pose an atypical and significant hardship on him in relation to the ordinary incidence of prison life? I'm referring, of course, to the standard in Sandin v. Connor, 515 U.S. 472 at 484 from 1995. What is the best evidence in the record that medical segregation presented conditions that would meet the Sandin standard? Your Honor, medical segregation in this case meets that standard because it's effectively solitary confinement. He's in, according to the record, Mr. McCoy is in a prison cell by himself for 23 hours a day. He's only let out for one hour for what is called range time when he can do a variety of activities but that is different than the typical prisoner in the typical situation. The other thing that's important about this case is that McCoy is a pretrial detainee. He's not convicted and so any punishment at that point violates his due process rights. This would be a different situation if he were an inmate who was convicted and any sort of punishment is incident to the conviction. This Court has dealt with this issue of punitive segregation in a number of other cases. We cite them in our brief and I don't think there's any suggestion in those cases that segregation of the sort that Mr. McCoy suffered is anything but different than the regular conditions of prison. The question is whether he's put in segregation for punitive reasons or for valid safety reasons. In some of the other cases, the Court goes through and explains when a valid safety reason is a reason to put someone in segregation. For example, when there's an actual incident that happens or in some of the extreme cases when the detainee solicits the murder of the arresting officer from the facility. In those cases, we don't have any dispute that it would be proper for the detainee to be put in segregation without notice in a hearing. The jail is well within its discretion to do that. What makes this case different and more like the Higgs case that we cite is that there isn't any evidence like that in the record. The only thing that we have is a statement that Menchaca makes in the context of litigation. It's not made when McCoy is segregated. It's years after the fact. All Menchaca says is, I put him in segregation to protect him from other inmates and to stop him from potentially preying on inmates because he's gay. Essentially, the determination that Menchaca makes is McCoy is a predator and it's not based on evidence. It's not based on something McCoy has done or Menchaca's history and experience at the facility. It's due to McCoy's sexual orientation. That is exactly what Menchaca says. I think that that's the sort of evidence that when a jury hears Mr. Menchaca on the stand, they're entitled to say, you put him in segregation out of animus toward gay people. It wasn't based on security risk. It wasn't based on the evidence. It wasn't based on a thought-out policy or procedure from the jail that we know that gay there's nothing like that here. Mr. July, I'd like to hear your thoughts on this requirement that the Northern District of Indiana has with regard to summary judgment motion, pro se, opposing party, the use of the warning, absence of the warning, and then the fact that a affidavit was filed in response to that. Sure. So that was the second point. I guess I never got to at the But it's also this court's requirement in Lewis and Tim's that in every case when a represented party seeks summary judgment against a pro se party, they have to provide additional notice. And that notice spells out how summary judgment is to be opposed. What are your thoughts then on the prejudice component? An argument that Mr. McCoy was not prejudiced as a result of the fact that he ended up complying by putting in some verified information. Sure. I think he was prejudiced first. The record is not clear that he put in an affidavit or any verified information. And the district court's dismissal order, he grants summary judgment because McCoy doesn't put in an affidavit or evidence is what the district court says. But the district court clearly considered what Mr. McCoy put in, that he put underneath, undersigned hereby verifies under the penalties of perjury, which maybe he didn't call it an affidavit, but I think we could infer that that was an affidavit. And the court considered what he included in that affidavit in ruling on the summary judgment. Sure, Your Honor. I think the difference, though, is that the purpose of the notice is to put the pro se party on alert of what he needs to produce. And so without that notice, I mean, it's a credit to McCoy's litigating skills, I guess, that he submitted some information that the district court construed as an affidavit. But McCoy never got the notice to say, give me your documents, give me an affidavit, explain your basis. And I think that's compounded by the other procedural ground that I think reversal is required, and that is that McCoy never actually got the documents that he properly requested and never received in discovery. I see that my time's ticked down. I'd like to reserve the rest for rebuttal. That's fine. Thank you. Thank you, Mr. Gillette. We'll now hear from Mr. Estrada. Mr. Estrada. Good morning, Your Honor. Alfredo Estrada, Burke Costanza Carburetor on behalf of Appalese. We're here today discussing an issue which plaintiff actually acknowledges and admits was in the best interest of his safety concern at the Lake County Jail due to his sexual orientation. Your Honors, Amicus relies heavily within his response to a jail grievance that lacked a clarifying statement as to punitive intent. It was a statement that was ambiguous as to whether the inmate's actions caused punishment by the jail officials or the inmate's actions caused a safety concern. And Amicus fails to direct to the court to Menchaca's direct statement as to punitive intent. He says, McCoy's classification was not to discuss about the safety concern that was raised upon his investigation through the medical intake where McCoy identifies himself as homosexual. And this court has ruled in Ramos that that investigation and notice of a inmate's sexual orientation is prudent. It's prudent. And that determination of that safety concern is given deference. Now he goes on, Amicus does point out where there is valid reasons for admin segregation due to other safety concerns. But the deference and the expertise of whether there's a safety concern relies on the jail officials second-guessing that determination. Forgive me, but was there any evidence demonstrating that Mr. McCoy was a predator or did men, it's a class, are sexual predators or are subject to attack? Yes, that's in his affidavit that upon intake, Mr. Defendant Menchaca saw a safety concern. The safety concern is the reason why he was placed into admin segregation. The reason there was a safety concern was because he noticed and investigated the sexual orientation of plaintiff. It's the day to day experience and expertise of the jail officials that is important here and that Amicus brushes over. This court... But I'm asking you if there was any evidence that demonstrated that he, he was either a predator or subject to attack? No, Your Honor, the safety concern rose out of the sexual orientation of McCoy. But in Holly v. Woolfolk, this court states because of the volatile atmosphere of a prison, an inmate may constitute a safety concern based upon reputation and rumor alone. And that's exactly what Menchaca did. He followed the Ramos opinion and he did a prudent investigation as to sexual orientation and he noticed the deference is given because in Ramos it's discussed. If he doesn't do that investigation and he ignores the known risks to homosexuals within a jail, then he lands himself liable to meritorious failure to protect claims. And in fact... Where in the record is that evidence? Excuse me, Your Honor? That he did this investigation. Your Honor, there's a medical exam, or I'm sorry, the medical intake is where McCoy informs the jail that he was homosexual. And then the affidavit, Your Honor, is the record where Menchaca explains the safety concern. Well, are all gay men placed in medical or mental areas of the prison? Well, at the time, the admin segregation was the medical floor of the Lake County Jail. It's a day-to-day decision by the correctional officers. And the inquiry is not to whether the safety concern was extremely valid because there's case law that says they're given to that, right? He's allowed to make preventive measures and decisions on a day-to-day level. The issue in inquiry is to the punitive intent of Menchaca and it's clear within his affidavit that there's no punitive intent. See, in your response brief, you know, you have that series of cases regarding the classification of prisoners for safety reasons. But in each of those cases, it appears that there was an individualized reason specific to each of those cases. And what I'm trying to get at is, where is there any individualized assessment of McCoy at the safety risk in the record? So that's within his affidavit, Your Honor. And the cases do cite actions by the inmate. But Menchaca found that primarily it is to protect McCoy. Where in that affidavit? I see the affidavit as saying, McCoy was placed in administrative segregation on the medical floor of the jail to protect him from other inmates preying on him and from him, due to McCoy's sexual orientation. Where does it individualize McCoy? And I must really be missing something. Well, I think that statement is pertinent to the safety concern, not the punitive intent. And that's what's the inquiry. What was his punitive intent? He made the jail official's loud deference into making that decision. And unfortunately, Defendant Menchaca was correct. There's evidence in the record that Mr. McCoy was ridiculed, was jumped, was in a violent altercation because of sexual orientation. Menchaca was correct. But that's a fact, of course. It is, Your Honor. But it goes to the reasonableness of Mr. Menchaca's determination and how he was right, in that the Mr. McCoy, because he was homosexual and identified as homosexual. Your Honors, if I could turn to the notice issue. You know, the analysis does not end on whether the trial, the docket, does depict that notice was given. The analysis goes forward into whether there was actual prejudice. And amicus and plaintiff failed to direct this court to any document that prejudiced the plaintiff by failure to give notice. There's no document in the record that would create a disputed material fact. If given notice, he would have produced and supported his motion in response to summary judgment. Would it have to be in the record, though? Because discovery often is not in the record. Well, Your Honor, if it's not pinpointed to the court, what document would have created that disputed material fact? Because no document exists. And the court, in amicus, agrees that the affidavit is the only record relevant to punitive intent in the due process claim. So we need to now analyze whether there's actual prejudice, and there wasn't. He submitted evidence in support of his medical treatment claim. He submitted a response in the penalty of perjury. It just wasn't good evidence. And the notice provision in the Northern District of Indiana tells you how to respond to summary judgment. It doesn't tell you what facts you need to plead or state in order to survive summary judgment. But I think their argument, the amicus argument, is that he didn't have notice that if he had other documents, something he should have submitted to raise an issue of fact. And that's how he was prejudiced. And, Your Honor, there's no record of what document was out there that would create a disputed fact. So you're saying they should have placed that, or moved to amend the record to include that if there were such a document? If there was such a document, they should have informed the court, is what I'm saying. At the district level, or here today, there's no actual prejudice to plaintiff. And the additional inquiry as to whether there are any set of facts to support his claim. And as to punitive intent, the affidavit is absolutely clear that there's no punitive intent up to Menchaca to classify, to punish McCoy. Menchaca, this court can find that Menchaca may have been incorrect in identifying a safety concern, but he's given deference on that decision, and still find that there was no punitive intent. And that's exactly what occurred here, and even at that level, if this court finds that. There's no reason to remand, and you should affirm the district court's ruling on summary judgment. If there's any other questions, I'd be happy to take them. If not, my time's run. Thank you, Mr. Estrada. Thank you. I would like to thank Amicus for his services to this court as well. Thank you, Mr. Estrada. Mr. Gillette, I'll recognize you for rebuttal. Your Honors, I have just a few quick points I'd like to emphasize on rebuttal. The first is that the intent of the officer in segregating is a classic jury question. There is no evidence in the record that Menchaca segregated McCoy for safety reasons. The only evidence is his statement in his affidavit, and at best, it is ambiguous. I think there's a good basis for a jury to infer punitive intent from his statement that he segregated McCoy due to his sexual orientation. Is there anything else in the record that would raise an issue of fact as to his intent besides the affidavit? Yes, Your Honor. I think circumstantial evidence from the context and timing of McCoy's segregation, the fact that he's cleared by medical and actually placed in general population, and there are no incidents, suggests that there was no reason for him to be sent to administrative segregation. I think, secondly, the lack of evidence on the other side is pretty powerful, that there's no contemporaneous document or policy or statement from anyone even suggesting that there's a security concern at the time. On appeal, not in the district court, the other side tries to betray the safety concerns by referring to this fight that happened after the fact. Not only does it happen after the fact, but I think when McCoy is in his cell 23 hours a day and he's put out for one hour around other inmates and gets in a fight, that tells me that segregation is not really intended to protect his safety. Otherwise, he would be put out for his one hour by himself. And finally, on the notice issue, I don't think there's any suggestion in the case law that we would add documents to the record about what would have gone in. If nothing else, those cases say reverse and remand and let the district court sort it out. Thank you very much. Thank you, Mr. Gillette. You have the thanks of the court as well as thanks to your firm for your services in the case. The case will be taken under advisement. Thank you as well, Mr. Ostroff. Thank you.